TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JEFFREY M. CHEMERINSKY (Cal. Bar No. 270756)
JOSEPH D. AXELRAD (Cal. Bar No. 274580)
Assistant United States Attorney
Violent and Organized Crime Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6520
    Facsimile: (213) 894-0141
    E-mail:    jeffrey.chemerinsky@usdoj.gov
               Joseph.axelrad@usdoj.gov

Attorneys for Applicant
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-296-JFW-3 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Sentencing Date: January 10, 2022 |
| JUNIOR ALMENDAREZ MARTINEZ, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby submits its position with respect to sentencing for defendant JUNIOR ALMENDAREZ MARTINEZ.

//

//

The government's position is based on the attached memorandum of points and authorities, the files and records in this case, and such additional evidence and argument as may be presented at the hearing on this matter.

Dated: January 3, 2022        Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

*/s/*
_____
JEFFREY M. CHEMERINSKY
JOSEPH D. AXELRAD
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant Junior Almendarez Martinez ("defendant") played a minor role in an extremely serious and violent conspiracy. The kidnapping conspiracy was brutal and violent, preying upon a vulnerable population. Defendant's role, however, was limited. He was managed by two friends in the United States who directed his actions. To the extent possible, defendant was kept largely in the dark about the nature of the conspiracy and given very specific and discrete roles. As a result, a just sentence for defendant must balance the overall brutality of the conspiracy with his relatively limited role.

The government has reviewed the Presentence Report and agrees with the calculations set forth therein, with one limited exception. The government recommends a 3-level minor role adjustment instead of the 2-level role adjustment recommended by the Probation Office. This would result in a Guidelines' range of 24-30 months' imprisonment.

In considering the factors involved, the government respectfully recommends that the Court impose a low-end sentence of 24 months' imprisonment, followed by 3 years' supervised release, $125,980 in restitution, and a special assessment of $200. The government believes such a sentence is sufficient but not greater than necessary to accomplish the goals set forth in 18 U.S.C. § 3553(a).

**II.  STATEMENT OF FACTS**

A summary of the relevant facts is set forth in the Presentence Investigation Report ("PSR"), paragraphs 45-58. As established at trial in this matter, defendant and co-conspirators Edgar Hernandez

Lemus ("Lemus") and Francisco Javier Martinez ("Martinez") collected ransom money and transferred it to Mexico. The kidnapping scheme was both brutal and prolific. Victims were brutally assaulted, including female victims who were raped.

Defendant's role was significantly more minor as compared to co-defendants Lemus and Martinez. Defendant, although certainly criminally culpable for his actions, was assigned discrete roles by Lemus and Martinez. From all of the evidence, he was lowest person in the conspiracy, at least in the United States, and in part was involved in order to shield Lemus and Martinez from criminal liability. For example, Lemus and Martinez relied on defendant to send money transfers to Mexico, likely in order to avoid having a record of their own names on the money transfers. On June 1, 2021, Lemus and Martinez relied on defendant to take an Uber with the ransom money and deliver it back to their house. It is also notable on that May 31, 2021, Lemus and Martinez sent defendant into the store first. After that ransom pick up was unsuccessful, they dropped defendant off and then completed that ransom pickup successfully without him later that day.

**III. RESPONSE TO THE PRESENTENCE INVESTIGATION REPORT**

    **A.   Probation's Guidelines Calculation**

Probation concluded that defendant has a total offense level of 17. PSR, ¶ 83. This calculation is based on the following:

```
Base offense (§ 2B1.1(a)(2))                              6
Loss greater than $95,000 (§ 2B1.1(b)(1)(E))             +8
Financial Hardship (§ 2B3.1(b)(2)(A)(iii))               +2
Scheme Outside the United States (§ 2B1.1(b)(10)(B))     +2
Risk of Death or Serious Bodily Injury (§ 2B1.1(b)(16))  +2
```

|   |   |
|---|---|
| Minor Role (§ 3B1.2(b)) | -2 |

**B.   Government Response**

The government has considered defendant's role and respectfully recommends a 3-level role adjustment instead of the 2-level adjustment recommended by the Probation Office. Defendant's role is significantly less than the roles played by either of his co-defendants. The government largely agrees with the Probation Office's analysis and description, contained in PSR paragraph 74-78, regarding the role defendant played. Defendant was directed by Lemus and Martinez to send Moneygram transfers to Mexico. Lemus and Martinez directed him who to send the money to and, on at least one occasion, drove him to the store. Defendant's payment for his role was extremely small, he received $20 or $40 for sending those transfers. PSR, ¶ 78. Unlike Lemus and Martinez, there is also no evidence that defendant had any contact either through the phone or in person with the kidnappers. For all of these reasons, the government has concluded that 3-level role reduction is appropriate.

The adoption of the Plea Agreement's calculations plus the application of the role enhancement gives defendant a total offense level of 17. This results in an advisory Guidelines range of 24-30 months.

**C.   Criminal History Calculation**

Probation concluded that defendant has no criminal history points, resulting in Criminal History Category I. PSR, ¶ 88. The government agrees with this calculation.

**IV. Analysis of § 3553(a) Factors**

**A. Legal Framework**

"All sentencing proceedings are to begin by determining the applicable Guidelines range," which serves as "the starting point and the initial benchmark" for determining a reasonable sentence. United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotation marks and citation omitted). The parties should then be given an opportunity to argue for what they believe is an appropriate sentence. Id. Following argument by the parties, the Court must consider each of the sentencing factors listed in 18 U.S.C. § 3553(a), including the applicable Guidelines range, "to decide if [those factors] support the sentence suggested by the parties." Id.; see also Gall v. United States, 552 U.S. 38, 49 (2007). In the end, the Court must impose a sentence that is "sufficient, but not greater than necessary," to reflect the offense's seriousness, to promote respect for the law, and to provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. See 18 U.S.C. § 3353(a); Carty, 520 F.3d at 991.

**B. The § 3553(a) Factors**

The government submits that a sentence of 24 months' imprisonment is appropriate under the circumstances. As described above, an appropriate sentence requires balancing the aggravating and mitigating facts for defendant. In aggravation, the violent, terroristic nature of the criminal conduct in which defendant was involved cannot be overstated. Victims of these kidnappings will remain traumatized for their entire lives. As set forth in greater

detail in the government's sentencing memorandum for co-defendant Lemus (CR 101), which is incorporated herein as well, at least two female victims were brutally raped while being held captive. However, there is no evidence that defendant was near or involved in those two ransom collections, aside from transferring proceeds on a later date to the conspirators in Mexico.  Additionally, as detailed further in the Lemus sentencing memorandum, the ransom paying victims were forced to empty their savings accounts and, sometimes, borrow money to pay the kidnappers.  However, based on the available evidence, there is no evidence that defendant came face to face with those individuals.  Defendant was, however, present in a vehicle outside a Walmart on at least one such occasion.  In other words, defendant was involved in a truly grotesque and horrific conspiracy, but was always at a distance, even when compared to the other two co-conspirators here in the United States.  Nonetheless, defendant should be held accountable for his role and the assistance he provided to this horrific conspiracy.  Defendant transported the ransom money, transferred the money through Moneygram, and on at least one occasion personally entered a store to look for a ransom paying victim.

The Probation Office has recommended a variance below the Guidelines.  However, the government respectfully believes that a low-end sentence accounts for both the mitigating and aggravating circumstances.  For example, while Probation cites to defendant's lack of criminal history, this is already factored into the Guidelines.  The 3-level role adjustment also fully accounts for defendant's role, which is the primary mitigating factor present in this case.

The government believes that the requested sentence also avoids unwarranted sentencing disparities.  The requested sentence is significantly less than 40 months' sentence that the Court imposed for co-defendant Martinez and the 120 months' sentence that the government has requested for Lemus.  This is commensurate with defendant's substantially lesser role in the offense, both in terms of his level of involvement and the significantly smaller number of instances in which he was involved.  Co-defendant Martinez deserves a greater sentence, even though he pled guilty, based on his significantly greater role.

The government believes that the requested sentence serves the purposes of general deterrence.  The sentence makes clear that such kidnapping for ransom schemes cannot be tolerated.  The requested sentence is a serious penalty for someone with defendant's level of involvement and will sufficiently make clear that individuals such as defendant, who play even a minor role in these offenses, will be prosecuted and punished.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to 24 months' imprisonment.  In addition, the government respectfully requests the Court order defendant to serve three years of supervised release and pay $125,980 in restitution.